COURT OF APPEALS
DECISION
DATED AND FILED

August 19, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. 2024AP546-CR

STATE OF WISCONSIN

Cir. Ct. No. 2022CF76

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JULIUS J. ELMER,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Outagamie County: MITCHELL J. METROPULOS, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Julius J. Elmer appeals from a judgment convicting him of fleeing or eluding an officer, as a repeat offender. The sole issue on appeal is the sufficiency of the evidence to support the knowledge element of the offense.

Based upon our standard of review, we conclude the evidence was sufficient to support the verdict, and we affirm the judgment of conviction.

## BACKGROUND

¶2 Aside from Elmer's intent, the parties do not dispute the basic facts adduced at trial. Patrol Officer Sam Gueli used the flashing red and blue emergency lights on his squad car to initiate a traffic stop of Elmer's vehicle because the vehicle was displaying an expired license plate. Elmer pulled over immediately.

¶3 Upon making contact with Elmer, Gueli noticed an odor that he believed to be marijuana emanating from Elmer's vehicle. Gueli returned to his squad car and radioed for backup while he ran Elmer's driver's license. Once additional law enforcement officers arrived, they searched Elmer's vehicle, but they did not find marijuana or other contraband. They then searched Elmer's person but again found nothing illegal. Gueli described Elmer's demeanor as being "uncooperative" during the encounter because Elmer did not want to step out of his vehicle or submit to a pat down search, and was "verbally aggressive."

¶4 After the searches, Elmer asked Gueli: "Are we good? Are we fucking done here? Can I have my shit?" Gueli did not directly respond to those questions, but the officers returned the property taken from Elmer during the search of his person, and Gueli told Elmer he could "go ahead and have a seat" in his vehicle. Elmer interrupted Gueli's direction by speaking at the same time. Neither Gueli nor any of the other officers told Elmer he was free to leave.

¶5 Gueli then returned to his squad car to fill out a warning form for the expired vehicle registration, but he did not tell Elmer what he was doing. At that

point, Gueli was still in possession of Elmer's driver's license. Meanwhile, the backup officers turned off their body cameras and began to leave the scene.

¶6     As Gueli was working on the form, Elmer sat in his car for a few minutes, revved his engine several times, then drove away from the scene at a "high rate of speed," and began executing "doughnut" maneuvers in a nearby intersection. Gueli pursued, ultimately stopped Elmer's vehicle again, and arrested him for fleeing or eluding.

¶7     Elmer took the stand and testified that after he had been given back his property, he asked Gueli whether he could leave and he heard Gueli respond, "You can. You can go ahead." Elmer said he believed that his license had been returned to him with his keys and phone. He claimed that he revved his engine because it was very cold outside, and he needed to warm up the engine. He said he then left because he was "just fed up" with how long he had been sitting there and figured Gueli would mail him his ticket—which was one of the options Gueli had earlier provided him. Elmer admitted to having done one doughnut after leaving the scene, but he attributed the maneuver to a lack of traction in the snow.

¶8     During closing argument, the prosecutor argued that Elmer knew he was not free to leave because Gueli had told Elmer to have a seat in his vehicle, Gueli had not returned Elmer's license or told Elmer he was free to leave, and Elmer did sit in his vehicle for several minutes before leaving. In reply, defense counsel asserted that Elmer mistakenly believed that he was free to leave after Gueli told him to "go ahead." He further argued that Elmer would have had no motivation to flee after having already pulled over for the stop and having cooperated with searches of his vehicle and person that yielded nothing. In

rebuttal, the prosecutor argued Elmer's motivation was to antagonize law enforcement, as he had been doing verbally throughout the encounter.

¶9      Consistent with WIS. STAT. § 346.04(3) (2023-24)[1] and WIS. JI—CRIMINAL 2630 (2024), the circuit court instructed the jury that the State needed to prove that Elmer: (1) operated a motor vehicle on a highway after receiving a visual signal from a marked police vehicle; and (2) knowingly fled or attempted to elude an officer by willful disregard of the visual signal, by increasing the speed of the vehicle.   Regarding the knowledge element, the court further instructed the jury: "You cannot look into a person's mind to find knowledge.   What a person knows or has reason to know must be found, if found at all, from the defendant's acts, words, and statements, if any, and from all the facts and circumstances in this case bearing upon knowledge.

¶10     The circuit court also instructed the jury on the defense of mistake, consistent with WIS. STAT. § 939.43(1) and WIS. JI—CRIMINAL 770 (2010), stating:

> Evidence has been received which, if believed by you, tends to show that the defendant believed that he was free to leave the scene of the original stop.   You must consider this evidence in deciding whether the defendant acted with the knowledge required for this offense.
>
> If an honest error of fact results in a person's not having the knowledge required for a crime, the person is not guilty of that crime.
>
> Before you may find the defendant guilty, the State must prove by evidence that satisfies you beyond a reasonable doubt that the defendant knowingly fled or eluded a marked police vehicle.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

¶11 The jury returned a guilty verdict. Elmer now appeals, challenging the sufficiency of the evidence to support the jury's verdict.

## DISCUSSION

¶12 Whether the State presented sufficient evidence to support a verdict is a question of law subject to our independent review. *State v. Booker*, 2006 WI 79, ¶12, 292 Wis. 2d 43, 717 N.W.2d 676. We review the sufficiency of the evidence by comparison to the instructions actually given to the jury, so long as those instructions conform to the statutory requirements of the charged offense. *State v. Beamon*, 2013 WI 47, ¶22, 347 Wis. 2d 559, 830 N.W.2d 681.

¶13 "It is the function of the trier of fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *State v. Poellinger*, 153 Wis. 2d 493, 506, 451 N.W.2d 752 (1990). A jury may choose to believe some assertions of a witness and disbelieve others. *State v. Kimbrough*, 2001 WI App 138, ¶29, 246 Wis. 2d 648, 630 N.W.2d 752. Only when the evidence relied upon is "inherently or patently incredible—that kind of evidence which conflicts with the laws of nature or with fully established or conceded facts"—will this court substitute its judgment for that of the trier of fact. *State v. Below*, 2011 WI App 64, ¶3, 333 Wis. 2d 690, 799 N.W.2d 95. We will therefore affirm "unless the evidence, viewed most favorably to the verdict, is so lacking in probative value and force that no reasonable factfinder could have found guilt beyond a reasonable doubt." *State v. Routon*, 2007 WI App 178, ¶17, 304 Wis. 2d 480, 736 N.W.2d 530 (citation omitted).

¶14 Here, Elmer contends that there was no evidence adduced at trial to support any hypothesis consistent with guilt and that it "defies logic" to impute an

intent to flee after the investigative portion of a traffic stop has already been completed. However, the State provided a reasonable hypothesis of guilt when it argued to the jury that Elmer's motivation was to antagonize law enforcement. Moreover, Elmer himself provided another motivation for leaving the scene before the stop was completed when he testified that he was "just fed up" with waiting.

¶15 In any event, the jury was able to judge Elmer's credibility both on the stand and from the videos of the encounter that the State played in court and entered into evidence. Based upon its credibility assessment, the jury was free to reject Elmer's assertions that he had misheard or misunderstood the officer's direction that he should go ahead and take a seat in his car to mean that he was free to go ahead and leave.

¶16 We conclude the evidence that Elmer drove away from a traffic stop after being told to sit in his car and while the investigating officer still had his driver's license, had not yet provided him a written warning, and had not yet told him he could leave is not so lacking in probative value that the jury could not have found Elmer guilty of fleeing or eluding an officer beyond a reasonable doubt. We therefore affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.